IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**WILLIAM D.,**

    **Plaintiff,**

v.

    Civil Action 2:20-cv-5855
    **Chief Judge Algenon L. Marbley**
    **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, William D., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Supplemental Security Income benefits.  Pending before the Court is Plaintiff's Statement of Errors (ECF No. 14), the Commissioner's Memorandum in Opposition, (ECF No. 20), Plaintiff's Reply (ECF No. 21), and the administrative record (ECF No. 11).  For the reasons that follow, the Undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's non-disability decision.

### I. BACKGROUND

Plaintiff filed his application for benefits on November 20, 2017, alleging that he had been disabled since September 20, 2017, and later amended his alleged onset date of disability to June 30, 2018.  (R. at 183-92, 205.)  Plaintiff claims he is disabled due to sciatica with right leg involvement, high blood pressure, anxiety, and posttraumatic stress disorder.  (R. at 210.) Plaintiff's application was denied initially in June 2018, and upon reconsideration in October 2018.  (R. at 66-106.)  On December 17, 2019, Plaintiff, represented by counsel, appeared and

testified at a hearing held by an Administrative Law Judge (the "ALJ"). (R. at 36-65.) A vocational expert ("VE") also appeared and testified. (*Id.*) On January 24, 2020, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 7-30.) On September 13, 2020, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, which became the Commissioner's final decision. (R. at 1-6.) Plaintiff then timely commenced the instant action.

## II. HEARING TESTIMONY

The ALJ summarized Plaintiff's statements to the agency and the relevant hearing testimony as follows:

> [Plaintiff] reported a remote history of being hit by a train as a passenger in a car in a February 2, 2018 Function Report. He claimed he could lift only 40 pounds and could walk only about a mile before he got tired and needed to stop and rest about a half hour before he could walk again. He also endorsed problems with lifting, bending, walking, hearing, memory, concentration, understanding, and following instructions. Additionally, [Plaintiff] indicated that he could not hear out of his left ear due to a busted left ear drum.
>
> At the hearing, [Plaintiff] testified that he was unable to work because of stress and because he did not have a driver's license. He also testified that he was unable to work because he cannot follow directions sometimes because it was hard to hear people because he could not hear out of his left ear at times. He indicated that he used to use hearing aids, as somebody had lent him some, but he can no longer locate them. Additionally, [Plaintiff] testified that he was not able to go up or down stairs like he used to, and while he found going down stairs easier, he had to slow down to climb up stairs. He indicated that he experienced pain in the ankle because one of the screws in his ankle had moved upward and was sticking out about ¼ inch. He also testified that he has been given inserts for his shoes to help with his pain. Regarding his back, [Plaintiff] testified he still had back pain despite participation in physical therapy once. He also testified that he was stiff in the morning and could hardly get up in the morning, but once he got up and started moving around, he was all right. He estimated he could lift probably about 10-15 pounds, stand no more than an hour maybe, and walk no more than a mile in the summertime before his foot started hurting. He also testified to problems with sitting, and stated he could not sit that long because his back started to hurt and he could not sit still. He estimated he could sit for 1 to 1½ hours at a time. Regarding activities of daily living, [Plaintiff] testified that he rode his bicycle sometimes,

> cleaned up the house doing dishes or pickup up things that were lying around. He also took the dog out. As for hobbies, he testified that he liked fishing, hunting, and swimming. As for his alleged mental impairments, [Plaintiff] testified that he was participating in counseling once every two or three weeks, and stated that he helped a little. When asked, [Plaintiff] stated that he experienced panic attacks and claimed he flipped out if nothing goes right. Additionally, [Plaintiff] testified that he freaked out and got paranoid. He further testified that although he had not gotten that way very many times, he would get mad about things, flew off the handle, and could not focus. He also testified that his anxiety caused nervousness and stated that he could not sit still. He also indicated that shopping malls and Christmas and New Year's Eve made him nervous. When asked, he also endorsed issues with memory, stating he could not remember at times, mostly doctor's appointments. He also indicated that he had difficulty understanding instructions from his doctors.

(R. at 19 (internal citations omitted).)

### III.  MEDICAL RECORDS

The ALJ summarized Plaintiff's relevant medical records and symptoms related to his physical impairment as follows:

> Regarding [Plaintiff's] back, the objective medical evidence documents his history of chronic low back pain, radiculopathy, and sciatica secondary to multilevel degenerative disc disease of the lumbar spine. This objective evidence certainly supports physical limitations. However, the totality of medical evidence does not support the severity and frequency of limitations as alleged by [Plaintiff].
>
> The record in this case contains little objective evidence to support [Plaintiff's] reports of pain and functional loss. The evidentiary record does document [Plaintiff's] longstanding low back and sciatic pain and musculoskeletal discomfort. While there have been subjective findings on examination such as limitations of motion due to pain, or pain on palpation on occasion, there is no evidence of persistent neurological deficits or signs of nerve root compromise. [Plaintiff] was able to lift and carry light objects at his May 19, 2018 physical consultative examination. He was able to squat and rise from that position, rise from a sitting position without assistance, and get up and down from the examination table without difficulty. Moreover, he exhibited normal dorsolumbar range of motion, sensory examination was normal to pinprick and light tough throughout, and straight leg raise tests was negative bilaterally. Moreover, imaging performed at the examination revealed mild degenerative changes and no obvious fractures. The "mild" diagnosis generally suggests that a condition is minor and generally does not support [Plaintiff's] allegations of debilitating pain or support any greater restrictions than those assessed herein. Examination found no focal tenderness with palpation of his spine on February 12, 2019. Moreover, range of motion and

3

neurologic sensation was intact and musculoskeletal strength was normal. The evidence also fails to show that [Plaintiff] has consistently exhibited most of the signs typically associated with chronic, severe pain, such as muscle atrophy, spasm, rigidity, or tremor; and [Plaintiff] has generally presented with a steady gait and ambulated independently without any observable difficulty. Further, clinical examinations have not identified signs of inflammatory disease, nor is there evidence of other signs that might be expected in the presence of a truly debilitating impairment such as bowel or bladder incontinence.

[Plaintiff] was able to lift and carry light objects at his May 19, 2018 physical consultative examination. He was able to squat and rise from that position, rise from a sitting position without assistance, and get up and down from the examination table without difficulty. Moreover, he exhibited normal dorsolumbar range of motion, sensory examination was normal to pinprick and light tough throughout, and straight leg raise tests was negative bilaterally. Moreover, imaging performed at the examination revealed mild degenerative changes and no obvious fractures. The "mild" diagnosis generally suggests that a condition is minor and generally does not support [Plaintiff's] allegations of debilitating pain or support any greater restrictions than those assessed herein. Further, [Plaintiff] has not needed the assistance of any ambulatory device, has not been prescribed a TENS unit, required a back brace, or been referred to an orthopedic specialist.

[Plaintiff's] medical history is also significant for chronic right ankle and foot pain secondary to degenerative disc disease of the right ankle. This objective evidence has been considered in arriving at the above physical residual functional capacity. However, the objective medical evidence fails to support his allegations and testimony regarding this condition and associated limitations. Imaging performed prior to his amended alleged onset date revealed moderate degenerative changes of the tibiotalar joint and mild degenerative changes of the talofibular joint and distal tibiotalar syndesmosis as well as postsurgical changes in the medial malleolus with cortical lag screw extending into the distal tibia; prominent periprosthetic lucency seen surrounding the proximal lag screw suggesting loosening; and talonavicular, midfoot arthropathy and plantar spur. Ankle mortise was intact, there was no fracture, dislocation, joint effusion, or soft tissue swelling appreciated. He demonstrated only mild limitation in range of motion in the ankle with respect to right active and passive plantar flexion and inversion and there was no significant debility, at his May 19, 2018 physical consultative examination. Moreover, he ambulated with a normal, reciprocal gait pattern without any assistive device. Again, the "mild" diagnosis generally suggests that a condition is minor and generally does not support [Plaintiff's] allegations of debilitating pain or support any greater restrictions than those assessed herein. Examination on January 30, 2019 found normal musculoskeletal range of motion with no edema or tenderness.

Examination found no obvious joint inflammation and range of motion was intact on February 12, 2019. Moreover, strength was normal and he was neurologically

> intact. While [Plaintiff] endorsed right ankle pain and associated difficulty initiating sleep on March 12, 2019, musculoskeletal examination was normal notes document his complaint of right ankle pain and associated difficulty initiating sleep. December 5, 2019 treatment notes from Ankle and Foot Specialists of Marion document his continued complaint of pain in his right ankle and heel. His podiatrist noted he needed to get new shoes, as his were "very broken down." [Plaintiff] was provided with custom functional orthotics and instructed on how to use them. He was given Ibuprofen for pain and advised to continue RICE therapy as well as stretching and wearing his night splint.

(R. at 20-21 (internal citations omitted).)  The ALJ then summarized the relevant medical records concerning Plaintiff's mental health symptoms as follows:

> In addition to his physical impairments, the objective medical evidence documents [Plaintiff's] complaints of and treatment for anxiety, depressive, and posttraumatic stress disorders. He reported seeking disability benefits due to mental health problems at his June 5, 2018 psychological consultative examination. This evidence does support some mental functional limitations. However, the objective medical evidence again does not support the extent of [Plaintiff's] subjective complaints regarding his mental limitations.
>
> The record supports anxiety and depression, but the record documents improvement in symptoms with conservative treatment, including medication management and counseling. *** Moreover, [Plaintiff] has been prescribed and has taken appropriate medications for his alleged impairments, including Vyvanse, Seroquel, and Trintellix. However, the medical evidence reveals that these medications have been relatively effective in controlling [Plaintiff's] symptoms with medication compliance, as evidenced by his specific denial of psychological problems many times. Moreover, treating sources have consistently failed to appreciate any psychological abnormalities on several occasions when [Plaintiff] was compliant in taking his medications. For example, [Plaintiff] was alert and had appropriate eye contact, speech, and mood at his May 19, 2018 physical consultative examination. Moreover, his memory and concentration were normal. [Plaintiff] denied mania and psychosis, and his mood was euthymic and his affect appropriate shortly before his amended alleged onset date on June 22, 2018. His doctor indicated his generalized anxiety and depression were stable. While [Plaintiff] reported worsening depression and mental status examination found his mood and affect anxious on January 10, 2019, his doctor noted he had not been seen since June 2018 and was not taking his medication. Subsequent treatment notes document improvement in his symptoms after resuming his medications. For example, he denied difficulty with concentrating, inappropriate interaction, or inconsolable psychiatric symptoms on January 24, 2019. Mental status examination found him alert and oriented with appropriate behavior, normal insight and judgment, normal attention span and concentration. Moreover, his mood and affect

were appropriate and not anxious. He was well groomed, his mood was pleasant, and no apparent memory loss was noted on January 28, 2019. He specifically denied agitation, behavioral problems, and dysphoric mood on January 30, 2019. Moreover, he was not nervous, anxious or hyperactive and mental status examination found his mood and affect, behavior, and judgment and thought content all normal. [Plaintiff] was not agitated and his mood was stable and his affect pleasant on February 12, 2019. He presented with a pleasant mood, was well groomed, and failed to demonstrate any apparent memory loss on February 4, 2019, February 21, 2019, March 4, 2019, April 8, 2019, and May 13, 2019. July 3, 2019 and August 6, 2019, September 3, 2019, and October 3, 2019 progress notes show his generalized anxiety disorder, panic attacks, and depression were stable with medication. His mood continued to be pleasant on October 24, 2019 and December 5, 2019.

Notwithstanding his allegations of concentration and memory deficits, consulting psychologist Dr. Paulus failed to appreciate any confusion or lack of awareness by [Plaintiff]. Moreover, the record is replete with documentation that his memory, mentation, attention, orientation and cognition were normal and intact.

(R. at 22-23 (internal citations omitted).)

## IV. ADMINISTRATIVE DECISION

On January 24, 2020, the ALJ issued the non-disability determination. (R. at 7-30.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);

substantially gainful activity since November 20, 2017, the application date. (R. at 12.) The ALJ then found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine; degenerative disc disease of the right ankle; bilateral hearing loss; diabetes; hypertension; obesity; and anxiety, depressive, and posttraumatic stress disorders. (*Id.*) He further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14.) Before proceeding to step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC"), in pertinent part, as follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can occasionally climb ramps and stairs, stoop, kneel, crouch, crawl; never climb ladders, ropes, or scaffolds; no more than loud noise; and occasional exposure to concentrated irritants such as dust, odors, fumes, and other pulmonary irritants. Mentally[,] [Plaintiff] is limited to perform simple, routine, repetitive tasks but not at a production rate pace, such as one has with assembly line work; limited to making simple, work-related decisions; can tolerate occasional changes in the workplace; no more than frequent interaction with supervisors, coworkers, and the public; duties and interactions would not include close teamwork, tandem work, or over the shoulder supervision; and would not include conflict resolution or evaluating or persuading anyone.

(R. at 18.)

At step four, the ALJ determined that Plaintiff has no past relevant work. (R. at 24.) Then, relying on the VE's testimony, the ALJ concluded that Plaintiff can perform other jobs that exist in significant numbers in the national economy. (R. at 25-26.) The ALJ therefore concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since June 30, 2018, the amended alleged onset date. (R. at 26.)

---

*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 119 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.   ANALYSIS

Plaintiff sets forth two assignments of error: that the ALJ reversibly erred in evaluating the opinions of consultative psychological examiner John Paulus, Ph.D., and that the ALJ improperly found that the record contains "little objective evidence of physical impairment." (ECF No. 14 at PAGEID ## 790-793.)[2]  First, Plaintiff argues that despite finding Dr. Paulus' opinion to be "persuasive," the ALJ erred by failing to incorporate Dr. Paulus' findings into his RFC, or at least by failing to explain why Dr. Paulus' limitations were not adopted. (*Id.* at PAGEID ## 790-792.)  Plaintiff also argues that "the ALJ's findings that the record contains little objective evidence of physical impairment is contradicted by the record." (*Id.* at PAGEID ## 792-793.)

In response, the Commissioner argues that the ALJ's RFC was supported by substantial evidence and the ALJ reasonably evaluated the medical opinion evidence and other record evidence. (*See generally* ECF No. 20.)  First, the Commissioner argues that while the ALJ appropriately found Dr. Paulus' opinion to be persuasive, "he did not have to adopt all [of] the limitations within it verbatim," and that "the ALJ gave proper reasons for his weighing of the medical opinion evidence." (*Id.* at PAGEID ## 810-814.)  Next, the Commissioner argues that "the ALJ provided a detailed discussion of the evidence as it related to Plaintiff's subjective complaints," and concludes that "[t]he ALJ gave adequate reasons for finding that Plaintiff's subjective statements were not entirely consistent with the medical evidence and other evidence

---

[2] In his Statement of Errors, Plaintiff only expressly sets forth one assignment of error, but upon closer review the Undersigned finds that Plaintiff has in fact set forth two separate bases on which the Court could remand the ALJ's decision. (*See generally* ECF No. 14.) Notwithstanding how Plaintiff organized his Statement of Errors, the Undersigned will review each of these issues in turn.

9

of record." (*Id.* at PAGEID ## 814-817.)

In reply, Plaintiff maintains that the ALJ "failed to actually incorporate Dr. Paulus' findings into his RFC <u>or</u> at least explain why the limitations opined by Dr. Paulus were not adopted." (ECF No. 21 at PAGEID ## 820-821 (underline in original).) Plaintiff did not, however, respond to the Commissioner's argument regarding the ALJ's discussion of Plaintiff's subjective complaints in light of the medical evidence. (*Id.*) The matter is thus ripe for judicial review, and the Court will discuss each assignment of error in turn.

**1.     The ALJ Did Not Err By Declining to Adopt All of Dr. Paulus' Limitations Into the RFC.**

First, Plaintiff argues that despite finding Dr. Paulus' opinion to be persuasive, the ALJ "failed to actually incorporate Dr. Paulus' findings into his RFC—or at least explain why the limitations opined by Dr. Paulus were not adopted." (ECF No. 14 at PAGEID # 790.) Plaintiff does not focus on the entirety of Dr. Paulus' opinion, but rather on two specific limitations which the ALJ did not incorporate into the RFC: first, Dr. Paulus' opinion that Plaintiff "is only able to perform one step instructions," and second, Dr. Paulus' opinion that Plaintiff is "limited in his ability to maintain effective social interactions on a consistent and independent basis with supervisors, co-workers, and the public." (*Id.* at PAGEID # 791.)

As a preliminary matter, Plaintiff is correct that the ALJ found Dr. Paulus' opinion to be persuasive:

> The undersigned has also considered the opinion of Dr. Paulus, the licensed psychologist who examined [Plaintiff] at the request of the State Agency. **The undersigned finds his opinion persuasive as a whole as well, as it is the result of his own observations, clinical interview, and a mental status evaluation.** Furthermore, as a consultant for the Social Security Administration, he has knowledge of Social Security Administration's program and requirements.

(R. at 24 (internal citation omitted; emphasis added).) At first glance, one may assume that

10

Plaintiff is also correct that the ALJ failed to explain how certain limitations from Dr. Paulus' "persuasive" opinion were not incorporated into the RFC, given how abrupt the ALJ's discussion of Dr. Paulus' opinion is. But upon review of the ALJ's decision in its entirety, it becomes clear that the ALJ clearly explained where, and why, his RFC differed from Dr. Paulus' opinion.

For example, regarding the Dr. Paulus' opinion that Plaintiff is "only able to perform one step instructions," the ALJ discussed – at length – why he found that Plaintiff could perform "simple, routine, repetitive tasks" contrary to Dr. Paulus' opinion:

> With regard to concentrating, persisting or maintaining pace, [Plaintiff] has a moderate limitation. [Plaintiff] has endorsed problems with concentration, multitasking, and short-term memory. He has also claimed he was easily distracted and could not follow instructions for long because he lost his concentration and stated his ability to follow spoken instructions was even worse. Nevertheless, he prepared his own meals, did laundry, and cleaned. Moreover, he was able to concentrate long enough to enjoy reading and watching television, football, or a movie. He also went fishing. [Plaintiff's] immediate recall skills were below average, with six digits forward and four digits in reverse, but he was able to recall two of three words presented earlier for a delayed recall test during his June 5, 2018 psychological evaluation. **Although consultative psychologist Dr. Paulus found [Plaintiff's] concentration and persistence on task were good, and pace of task was average at his June 5, 2018 psychological consultative examination, he opined he had limited ability to concentrate and complete tasks or work at a reasonable pace**.
>
> \*\*\*
>
> Turning to [Plaintiff's] mental [RFC], the State Agency reviewing psychological consultants reviewed the record at the initial and reconsideration levels and found he had does not have greater than moderate limitation in any of those four functional domains set forth above in Finding 3. Moreover, **they found [Plaintiff] retained the capacity to complete simple tasks up to 4 steps**; would need a static work environment with short cycle tasks and less strict production quotas, pace, and guidelines; would need superficial interactions with others; and would need a predictable change in the work environment. The State Agency reviewing psychological consultants are well-qualified by reason of training and experience in reviewing an objective record and formulating an opinion as to mental limitations. They possess specific "understanding of our disability programs and their evidentiary requirements". **The undersigned finds these prior administrative medical findings persuasive as they are generally consistent**

11

> **with and well supported by the evidence of the record as a whole, including a review of the B and C criteria of Listings 12.04, 12.06, and 12.15, and are generally accepted as accurate representations of [Plaintiff's] mental status since June 30, 2018, [Plaintiff's] amended alleged onset date.** The evidence received into the record after the reconsideration determination concerning his status did not provide any credible or objectively supported new and material information that would alter the State Agency's findings concerning his mental limitations. **While the undersigned finds such limitations generally consistent with the above residual functional capacity, and the overall records, the undersigned has reframed [Plaintiff's] mental functional capacity above in order to use vocationally relevant terminology that the State Agency reviewing psychological consultants did not use in their opinions**.

(R. at 23 (internal citations omitted; emphasis added).) Thus, the ALJ specifically explained that Dr. Paulus' "one step" limitation was not internally consistent with Dr. Paulus' own finding that "Plaintiff's concentration and persistence on task were good," whereas the State agency psychologists' opinions were both internally consistent and consistent with the evidence of the record as a whole. (*Id.*) Such explanation clearly explains why the ALJ aligned his RFC closer to the State agency psychologists' opinions than to Dr. Paulus' opinion (albeit in "vocationally relevant terminology" that the State agency psychologists did not use), and it is supported by substantial evidence. (*Id.*)

Turning to Dr. Paulus' opinion that Plaintiff is "limited in his ability to maintain effective social interactions on a consistent and independent basis with supervisors, co-workers, and the public," the Undersigned finds that the ALJ similarly discussed why he instead limited Plaintiff to "no more than frequent interaction with supervisors, coworkers, and the public":

> **In interacting with others, [Plaintiff] has a moderate limitation.** [Plaintiff] initially endorsed problems getting along with family, friends, neighbors, and other because all they did was fight. He also indicated he did not get along with police because they did not like him and were always looking for trouble. Nevertheless, [Plaintiff] subsequently denied having any problems with his neighbors or people in authority. Moreover, the record shows [Plaintiff] has lived with his best friend for 20 years. [Plaintiff] also indicated he had problems with coworkers because he did not like that they offered him advice on how to do his job and would get in

12

> arguments as a result. He also related having conflicts with his bosses because he would break the rules. While he claimed he stayed home for fear of having a panic attack in public, the record shows he went fishing and to church and the community center as much as he could. He testified that he went to the grocery store once or twice a week. While he reported he was suspicious of people and thought they were watching him or following him sometimes, he also spent time with others and talked to friends and family on the phone or by text messages every other day.
>
> **Consulting psychologist Dr. Paulus concluded [Plaintiff] was limited in his ability to maintain effective social interaction on a consistent and independent basis with supervisors, coworkers, and the public. Further, the evidence in the record, including his testimony at the hearing, shows that he was able to interact independently, appropriately, effectively, and on a sustained basis with other individuals, and there is no indication that he has not been socially appropriate with treating or consulting sources**. Moreover, he presented to the hearing with no observable social difficulty. He was polite, cooperative, and did not display any problems interacting with the other participants or answering questions.

(R. at 16-17 (internal citations omitted; emphasis added).) For this limitation, the ALJ directly juxtaposed Dr. Paulus' opinion with the following evidence: (i) Plaintiff's denial of social interaction problems with neighbors or authority figures; (ii) Plaintiff's history of living with his best friend for 20 years; (iii) Plaintiff's history of going fishing, to church, and the community center "as much as he could"; (iv) Plaintiff's testimony that he went to the grocery store one or twice a week; (5) Plaintiff's report that he spent time with others and talked to friends and family on the phone or by text message every other day. (*Id.*) In the face of that evidence, the ALJ reasonably discounted Dr. Paulus' opinion on this issue, and the Undersigned finds that the ALJ adequately explained the bases for that decision.

The Undersigned emphasizes that the relevant question is not whether the ALJ could have adopted Dr. Paulus' opinion, but rather whether the ALJ's RFC was supported by substantial evidence. *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *4 (6th Cir. Aug. 10, 2020) ("Even if the record could support an opposite conclusion, we defer to the

13

ALJ's finding because it is supported by substantial evidence, based on the record as a whole.") (internal citations omitted). And to be clear, ALJs are not "required to incorporate the entirety of [an] opinion into an RFC." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). "Indeed, 'an RFC determination is a legal decision rather than a medical one, and the development of a claimant's RFC is solely within the province of an ALJ.'" *Borgan v. Comm'r of Soc. Sec.*, Case No. 2:20-cv-6166, 2022 WL 109346, at *6 (S.D. Ohio Jan. 12, 2022) (quoting 20 C.F.R. §§ 404.1527(e), 405.1546). Therefore, notwithstanding the fact that the ALJ found Dr. Paulus' opinion to be "persuasive as a whole," the ALJ was not required to incorporate any specific portions of Dr. Paulus' opinion into his RFC.

While Plaintiff may have preferred a different RFC than the one determined by the ALJ, the ALJ thoroughly explained the bases for his RFC determination, and the ALJ's explanation enjoys substantial support in the record. *Dickinson v. Comm'r of Soc. Sec.*, No. 2:19-CV-3670, 2020 WL 4333296, at *11 (S.D. Ohio July 28, 2020), *report and recommendation adopted*, No. 2:19-CV-3670, 2020 WL 5016823 (S.D. Ohio Aug. 25, 2020) (citing *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 649 (6th Cir. 2013); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) ("The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.")). Because the ALJ clearly explained the bases for his RFC determination and supported that analysis with substantial evidence, the Undersigned defers to the ALJ's decision. Accordingly, Plaintiff's first assignment of error is not well taken.

**B.     The ALJ Did Not Err In Evaluating the Record Evidence Related to Plaintiff's Subjective Complaints.**

Plaintiff additionally argues, albeit almost in passing, that "the ALJ's findings that the record contains little objective evidence of physical impairment is contradicted by the record." (ECF No. 14 at PAGEID # 793.)  In support, Plaintiff cites four diagnostic images of Plaintiff's lumbar spine and right knee, and notes that "[i]n September 2016, he was observed to have an antalgic gait on the right."  (*Id.* (citing R. at 391, 420, 464, 481, 677).)  In response, the Commissioner generally argues that "the ALJ discussed evidence relevant to [Plaintiff's] subjective symptom evaluation, which provides adequate support for his finding and demonstrates it was not patently wrong." (ECF No. 20 at PAGEID ## 816-817.)  Curiously, Plaintiff does not respond to the Commissioner's argument in his Reply brief.  (*See* ECF No. 21.)

While it is unclear whether Plaintiff has abandoned this argument or conceded to the Commissioner's counterarguments by not addressing it in Reply, for the sake of completeness the Undersigned finds that the ALJ properly discussed the subjective and objective evidence in the record.  As a preliminary matter, the Undersigned takes issue with Plaintiff's characterization of the ALJ's decision, as the ALJ noted that "[t]he record in this case contains ***little objective evidence to support [Plaintiff']s reports of pain and functional loss***," not that "the record contains ***little objective evidence of physical impairment***" as Plaintiff contends.  (*Compare* R. at 20 *with* ECF No. 14 at PAGEID # 793 (emphasis added).)  In fact, the ALJ expressly noted that the objective evidence in the record "certainly supported physical limitations," and merely concluded that "the totality of medical evidence does not support the severity and frequency of limitations as alleged by [Plaintiff]."  (R. at 20.)  Plaintiff's argument is therefore rooted in a false premise.

15

Further undermining Plaintiff's argument is the fact that the ALJ extensively defended his conclusion throughout his decision. As it related to Plaintiff's low back and sciatic pain and musculoskeletal discomfort, for example, the ALJ noted that "there [was] no evidence of persistent neurological deficits or signs of nerve root compromise" in Plaintiff's July 2016 lumbar spine x-ray. (R. at 20 (citing R. at 481).) The ALJ also discussed Plaintiff's medical records and noted that Plaintiff "was able to lift and carry light objects"; was able to squat and rise from that position, rise from a sitting position without assistance, and get up and down from the examination table without difficulty; exhibited normal range of motion, straight leg testing, and strength; and exhibited no tenderness on his spine. (*Id.* (citing R. at 341, 732).) Reviewing other diagnostic images, the ALJ found that Plaintiff's spine had "no obvious fractures" and only mild degenerative changes, which the ALJ noted "does not support [Plaintiff's] allegations of debilitating pain or support any greater restrictions than those assessed herein." (*Id.* at 341.) The ALJ also discussed what the medical record evidence did not show, noting that "[t]he evidence also fails to show that [Plaintiff] has exhibited most of the signs typically associated with chronic, severe pain . . . and [Plaintiff] has generally presented with a steady gait and ambulated independently without any observable difficulty." (*Id.* (citing R. at 340, 457, 527, 611-612, 631-639, 702-703, 708).) The ALJ further noted that Plaintiff "has not needed the assistance of any ambulatory device, has not been prescribed a TENS unit, required a back brace, or been referred to an orthopedic specialist." (*Id.*)

The ALJ performed a similarly thorough analysis of the record evidence regarding Plaintiff's right knee. First, the ALJ discussed all of the diagnostic images cited by Plaintiff, but noted that "[i]maging performed prior to [Plaintiff's] amended alleged onset date . . . demonstrated mild tricompartmental osteoarthritis of the right knee." (R. at 13 (citing R. at

16

420).) The ALJ also noted how Plaintiff's "mild" diagnosis of osteoarthritis "generally does not support [Plaintiff's] allegations of debilitating pain or support any greater restrictions than those assessed herein." (*Id.* (citing R. at 420, 481).) The ALJ also highlighted that "there was no joint swelling, erythema, effusion, tenderness, or deformity in the knee and range of motion was normal in all domains assessed during his May 19, 2018 physical consultative examination," and that "subsequent examinations frequently found normal range of motion in the joint . . . including as recently as April 23, 2019." (*Id.* (citing R. at 340, 346, 443, 496-630).)

The Undersigned finds that the ALJ adequately explored the entire record for subjective and objective evidence of Plaintiff's alleged impairments. Then, the ALJ clearly identified substantial evidence which supported his conclusion that "the totality of medical evidence does not support the severity and frequency of limitations as alleged by [Plaintiff]." (R. at 20.) There was no error with the ALJ's analysis. Accordingly, Plaintiff's second assignment of error is not well taken.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits, and that the ALJ's decision was made pursuant to proper legal standards. Based on the foregoing, it is therefore **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in

question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:   January 21, 2022                           /s/ *Elizabeth A. Preston Deavers*
                                                    Elizabeth A. Preston Deavers
                                                    United States Magistrate Judge

18